| | |
|---|---|
| **I LOVE OMNI, LLC and HEIDI WHITEHAIR**<br><br>         Plaintiffs,<br><br>V.<br><br>**OMNITRITION INTERNATIONAL, INC.**<br><br>         Defendant. | IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRCT OF TEXAS- DALLAS DIVISION |

## ORIGINAL COMPLAINT

Plaintiffs, I LOVE OMNI, LLC AND HEIDI WHITEHAIR (hereinafter "Plaintiffs" or "Whitehair") by their undersigned counsel, as for its ORIGINAL COMPLAINT seeking relief against Defendant OMNITRITION INTERNATIONAL, INC. (hereinafter "Defendant" or "Omnitrition", affirmatively asserts as follows:

### I.     Brief Summary of the Case

1. This matter arises from an eighteen-year relationship in which Defendant steadily deprived Plaintiff of the ability to continue to earn income after

building a sales organization, was ridiculed for her efforts, and was eventually terminated for the manufactured violation of company rules resulting in the substantial loss of income. Defendant's action can only be described as vindictive and self-serving.

## II. Parties

2. Plaintiff: I LOVE OMNI, LLC is a privately held Washington LLC. Its principal office is located in Auburn, Washington. Its registered agent for service of process is Heidi Whitehair.

3. Plaintiff, Heidi Whitehair, is an individual with her principal residence located in Auburn, Washington.

4. Defendant Omnitrition International, Inc. is a domestic Texas corporation with its registered agent David Epperson, CPA located at 700 North Pearl Street, Suite 1100, Dallas, Texas 75201.

## III. Jurisdiction and Venue

5. Diversity Jurisdiction. Jurisdiction before this court is proper pursuant to 28 United States Code Section 1332, which provides for diversity jurisdiction. In this matter the parties are diverse with I LOVE OMNI and Heidi Whitehair being citizens of Washington while Omnitrition International, Inc is a registered corporation and resident of the State of Texas. See 28 U.S.C. § 1332. (2005).

6. Federal Question Jurisdiction. This Court also has jurisdiction in this matter pursuant to its federal question jurisdiction provided under 28 United States

Code Section 1331.  Plaintiffs are bringing a claim for relief pursuant to 15 U.S.C. § 1125, commonly known as the Lanham Act.  Herein, Plaintiffs assert a cause of action under Section 43(a) for False Advertising.

7. Venue. Venue properly lies within this District pursuant to 28 United States Code Section 1391(b)(3), because the parties consented to the jurisdiction of venue within the state or federal courts of Texas.[1]

8. Alternatively, venue is proper in this District as Defendant Omnitrition is subject to personal jurisdiction in this district as required by Section 1391(d). Omnitrition is a national corporation with distributors within and sales to residents within the State of Texas.

## IV.    Applicable Law

9. This dispute between the parties arises among other areas pursuant to The Omnitrition Sales and Marketing Plan and Rules and Regulations Handbook, wherein all parties agreed that it would be "governed by and construed in accordance with the laws of the State of Texas".

## V.    Factual Background

### a.  *Heidi Whitehair Joins Omnitrition in 1998.*

10. On October 21, 1998, nearly eighteen years ago, Heidi Whitehair joined Omnitrition International, Inc. as an Independent Marketing Associate ("IMA") also known as a Distributor of Omnitrition products.  The Handbook

---

[1] See Exhibit A, The Omnitrition Sales and Marketing Plan and Rules and Regulations Handbook, Section I-8.

provides that to remain an IMA in good standing, one is expected to abide by the Omnitrition Rules and Regulations. In exchange they are promised certain benefits which include presumably correct payments under the Sales and Marketing Plan.

b. ***Omnitrition Classifies Its Distributors as Independent Contractors.***

11. Pursuant to Section B-10 of the Handbook, all IMA's are contractors, independent of Omnitrition. Further, they are strictly prohibited from identifying themselves as anything else.[2]

12. In fact, Omnitrition declared that it would not treat IMA's as employees with respect to the IRS, Social Security, and unemployment or other state and federal rules.[3]

13. IMA's are responsible for their own managerial decisions and expenditures, including all income and self-employment taxes.[4]

14. IMA's receive no compensation for sponsoring another IMA into the Omnitrition genealogy.[5]

15. IMA's are responsible for educating consumers and new IMA's about the product line as well as the Sales and Marketing plan.[6] IMA's do so without any independent compensation for their actions and at their own expense.

---

[2] Exhibit A, Omnitrition Sales and Marketing Plan, Page 12, Section B-10.
[3] Exhibit A, Page 13, Section B-12.
[4] Exhibit A, Page 13, Section B-13.
[5] Exhibit A, Page 13, Section C-1, last sentence.
[6] Exhibit A, Page 13, Section C-3.

16. It is fair to say that an IMA learns how to operate under the Omnitrition Handbook from another IMA, and they do so without any additional compensation for this training.[7]

### c. Omnitrition's Rules and Regulations Admit that an IMA's Genealogy Has Value Capable of Being Transferred to an Independent Business.

17. Section C-5 of the Handbook recognizes that the downline created by an IMA has value that may be desirous of being acquired by another individual or entity.[8]

18. Section C-12 recognizes this same potential value by providing rules concerning any sale of the distributorship. [9]

19. The value of the distributorship is again recognized be making provisions for transfer upon the unfortunate death of the IMA.[10]

### d. In Exchange for Selling Products in Approved Manner, IMA's are Entitled to Earn Commissions.

20. IMA's achieve earnings pursuant to the Omnitrition Business Opportunity in five ways:

   a. Retail Profits

   b. Discount and Wholesale Profits

   c. Royalty Overrides

---

[7] Exhibit A, Page 13, Section C-3.
[8] Exhibit A, Page 14, Section C-5.
[9] Exhibit A, Page 15, C-12
[10] Exhibit A, Page 16, Section C-13.

    d. Bonus Level Royalty Overrides

    e. Periodic Promotional Bonuses.[11]

21. All active IMA's are authorized to sell Omnitrition products and participate in the Omnitrition Sales and Marketing Plan.[12]

22. Plaintiffs were promised that as the "IMA's Personal/Group volume increases, he or she is entitled to purchase products on the Accumulating Profit Sliding Scale, which provides up to a 40% discount off the suggested retail selling price. This gives the IMA a profit margin from which to build retail business."[13]

23. The manner in which this works is if one of the Distributors under the IMA places an order with Omnitrition and the IMA's discount is higher (i.e. 40%) than the downline Distributor's discount (i.e. 20%), the IMA will earn the difference (i.e. an additional 20%).[14]

24. Once an IMA becomes a Fully Qualified Supervisor, they receive the 40% discount on all retail sales.[15]

25. A fully Qualified Supervisor is also entitled to earn a Royalty Override and Bonus incomes from their Organizational volume. The Royalty Override can

---

[11] Exhibit A, Omnitrition Sales and Marketing Plan, Page 3.
[12] Exhibit A, Section B-3.
[13] See Exhibit A, page 7 (middle of the page).
[14] See Exhibit A, page 7
[15] To become a Fully Qualified Supervisor an IMA must achieve $4,000 in Personal/Group Volume in one month, or $2,000 in Personal/Group Volume in two consecutive months with at least $1,000 in Unallocated volume in each qualifying month.

be up to 5% of at least three generations of Down-line Fully Qualified Supervisors.[16]

26. To remain an IMA a distributor does not have any sales requirements, and must only apply for renewal and pay the renewal fee.

27. A Bonus Level Supervisor can earn an additional three levels of Royalty Overrides, but in exchange must sign a Non-Compete Agreement.[17]

28. I Love Omni qualified as a Bonus Level Supervisor and was earning six levels of Royalty Overrides.

29. Commissions, Royalty Overrides and Bonus Level Royalty Overrides are calculated on a monthly basis. Payments of Commissions, Royalty Overrides and Revenue Sharing Bonuses are paid on the 15th day of the month following the month in which they were earned.

30. Omnitrition requires all IMA's to agree that it may unilaterally change its Rules and Regulations without notice.[18]

## VI. Causes of Action

### a. *Declaratory Judgment*

31. A person interested a written contract, or other writings constituting a contract, may have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status, or other

---

[16] Exhibit A, page 8 (top of the page).
[17] Exhibit A, Page 8 (middle of the page)
[18] See Exhibit A, Page 10, bottom of the page.

legal relations thereunder. A contract may be construed either before or after there has been a breach. Tex. Civ. Prac. & Rem.Code §37.004 (1985).

32. Plaintiffs seek declarations from this Court concerning interpretation of Defendant's Handbook. In particular, Plaintiffs seek the ruling concerning interpretation of the Handbook on the following issues:

   a. Omnitrition's unilateral change in the Handbook do not alter the contract under which an IMA originally agreed to perform with Omnitrition.
   b. IMA's under the Omnitrition Handbook are Independent Contractors.
   c. The name and contact information of other IMA's introduced to Omnitrition by the IMA are not confidential and proprietary information belonging to Omnitrition.
   d. Omnitrition Distributors receive no compensation from Omnitrition for recruiting or training individuals to join the Omnitrition Sales and Marketing Plan.
   e. Withholding compensation for past work performed in building a downline upon suspension or termination constitutes an unlawful appropriation of property under the Texas Theft Liability Act

   b. ***Breach of Provisions of the Sales and Marketing Plan and Rules and Regulations Handbook.***

33. To recover on a claim of breach of contract under laws of the State of Texas, a Plaintiff must show: (1) a valid contract, (2) a material breach, and (3) damages. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.,* 227 S.W.3d 876, 882 (Tex. App.--Dallas 2007, no pet.).

34. Plaintiffs have expended years of time, thousands in monetary resources, and personal know-how in the development of relationships to participate in the Omnitrition Sales and Marketing Plan all believing they were building an asset that would entitle them to retirement income.

35. Plaintiff, I Love Omni, LLC, voluntarily terminated its non-compete on July 26, 2016. Thereafter, Omnitrition issued a letter of suspension to I Love Omni on July 28, 2016 citing Ms. Whitehair's personal website as a violation of Omnitrition's Rules and Regulations as the motivation for the suspension. Prior to the due date for the response, on August 5th, Defendant issued a letter of termination to I Love Omni.

36. Defendant failed to follow their own rules and regulations by:

    a. Terminating I Love Omni due to the website www.heidiwhitehair.com being a "blind ad;"

    b. Failing to follow its rules and regulations by termination of the I Love Omni Distributorship prior to a response to the letter of suspension;

    c. Withholding commissions earned by I Love Omni prior to and after its letter of termination of the Non-Compete;

    d. Improperly calculating commissions, royalty payments, and bonus payments to I Love Omni.

37. As a result of Defendant's failure to honor the Sales and Marketing Plan and improper enforcement of the Rules and Regulations, Plaintiffs have suffered monetary damages that are likely to exceed $2,000,000 in damages.

    c. ***Violation of the Texas Theft Liability Act.***

38. Pursuant to Section 134.003, a person[19] who commits theft is liable for the damages resulting from the theft. TEX. CIV. PRAC & REM. CODE. A theft is

---

[19] Person is defined as an individual, partnership, corporation, association, or other group, however organized. Tex. Civ. Prac. & Rem. Code § 134.002.

unlawfully appropriating property or unlawfully obtaining services. TEX. CIV. PRAC & REM. CODE § 134.002(1). Under the Texas Penal Code, Section 31.04, one commits theft if the actor intentionally or knowingly secures the performance of the service by agreeing to provide compensation and, after the service is rendered, fails to make full payment after receiving notice demanding payment.

39. Here, Ms. Whitehair, acting through I Love Omni, produced millions of dollars in sales to Defendant through both customer acquisition and training of others to perform the same acts. Throughout her long and dedicated career, she expended untold hours and resources in developing a marketing team for the benefit of Omnitrition.

40. Omnitrition's unilateral ability to suspend or terminate distributorship for an alleged violation of the Rules and Regulations may be within permitted, but the unilateral taking of all income associated therewith certainly is not.

41. It remains clear under the Handbook that I Love Omni is an independent contractor pursuing the right to build an independent business. Omnitrition's ability to not only suspend all payments and thereafter claim ownership of the downline constitutes an unlawful withholding of commissions, royalty payments and bonus payments under the Texas Theft Liability Act.

42. Further, Plaintiff, I Love Omni asserts that the commissions received over at least the last four years since April 2013 are purposefully inaccurate and

have been retained by Defendant. In particular, Plaintiff asserts that Omnitrition fails to accurately pay its distributors the full commissions earned under the Profit Sliding Scale portion of the compensation plan, and likely others.

    d. ***Business Disparagement***

43. Following suspension and termination, Omnitrition has undertaken a campaign to disparage the reputation of Ms.Whitehair.

44. In a business disparagement claim, a plaintiff must establish the following elements: 1) the defendant published false and disparaging information about it; 2) with malice, 3) without privilege, 4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex 2003).

45. During and after the suspension of I Love Omni, Defendant undertook to claim that Ms. Whitehair was ill motivated by her decision to terminate her non-compete, that she was to blame for a lessening of sale in her sales team due to a lack of effort, and that she had made disparaging statements again Defendants.

    e.    ***Tortious Interference with Business Relationships.***

46. Following the termination of its non-compete and prior to its suspension of I Love Omni on July 28, 2016, employees of Omnitrition informed other Omnitrition IMA's that Ms. Whitehair had been terminated and that her downline no longer had support from her. Omnitrition systematically undertook

to raid and re-assign the IMA's and customers within the downline of I Love Omni which resulted in demolition of the value of the I Love Omni downline.

### f. *Lanham Act Violations*

47. It is a violation of Section 41 U.S.C. §1125(a)(1) if: (1) a false or misleading statement of fact; is (2) used in a commercial advertisement or promotion; (3) deceives or is likely to deceive in a material way; (4) in interstate commerce; and (5) has caused or is likely to cause competitive or commercial injury to the plaintiff.

48. Plaintiffs assert herein that Defendant Omnitrition has violated the Lanham Act in its advertising concerning its business opportunity and products. In particular, Plaintiffs allege the following commercial statements are false or misleading and likely to deceive which in turn caused material injury to Plaintiffs:

   a. Omnitrition has 5.2 million distributors in 24 countries around the world.
   b. Any distributor who signed up on or after March 1st, 2012 will be subject to auto renewal annually within 1 month of the anniversary of their sign up date and will have the charge applied to the credit card on file.[20]

### VII. *Trial by Jury Requested.*

49. Plaintiff seeks a trial by jury on all issues triable to a jury.

---

[20] Exhibit A, Page 25, last paragraph.

## *VIII.  Relief Requested*

For the above stated reasons, Plaintiffs respectfully request that Defendants be cited to appear and that Plaintiffs be awarded a judgment against Defendants jointly and severally for the following:

1. Monetary Damages

    a. Expectancy Damages

    b. Reliance Damages

    c. Lost Profits

    d. Loss of Credit

    e. Loss of Goodwill

    f. Exemplary Damages

    g. Court Costs

    h. Attorneys' Fee

    Respectfully submitted,

    /s/ Jenifer L. Grace
    **JENIFER L. GRACE**
    State Bar No. 24026777
    Attorney-in-Charge
    The Grace Firm, PLLC
    901 Sam Rayburn Highway
    Melissa, Texas 75434
    (972) 439-1750   Telephone
    (800) 335-2901   Facsimile
    jenifer.grace@gracefirm.com

    **ATTORNEY FOR PLAINTIFF**