UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| I LOVE OMNI, LLC, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:16-CV-2410-G |
| OMNITRITION INTERNATIONAL, | ) | |
| INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| HEIDI WHITEHAIR, ET AL., | ) | |
| | ) | |
| Counter-Defendants/ | ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Omnitrition International, Inc. ("Omnitrition"), to dismiss the claims of the plaintiffs, I Love Omni, LLC ("ILO") and Heidi Whitehair ("Whitehair"), pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), or alternatively for a more definite statement pursuant to Rule 12(e) (docket entry 9). For the reasons stated below, the defendant's Rule 12(b)(1) and

Rule 12(e) motions are denied.  The defendant's Rule 12(b)(6) motion is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background

Omnitrition is a direct sales, person-to-person marketing company.  Original Complaint ("Complaint"), Exhibit A, at 6 (docket entry 1).  Whitehair is an individual residing in Auburn, Washington.  *Id.* ¶ 3.  ILO is a privately-held limited liability company with its principal place of business in Auburn, Washington.  *Id.* ¶ 2. The plaintiffs allege that Whitehair acted through ILO in dealing with Omnitrition and that both of the plaintiffs generated millions of dollars in sales for Omnitrition. *Id.* ¶ 39.

Whitehair became a distributor of Omnitrition products in 1998.  *Id.* ¶ 10.  A distributor of Omnitrition products is also referred to as an Independent Marketing Associate ("IMA").  *Id.*  IMAs are paid for selling Omnitrition products in accordance with Omnitrition's sales and marketing plan.  *Id.* ¶¶ 20, 21.  IMAs may sponsor other Omnitrition distributors, and an IMA's sponsored distributors become part of the IMA's down-line organization or personal/group organization.  *Id.*, Exhibit A, at 4.

IMAs earn money by selling Omnitrition products purchased at a discount to retail customers; by selling Omnitrition products to distributors within the IMA's personal/group organization; by earning the difference between a down-line

distributor's discount and the IMA's discount on the Omnitrition product purchases made by the down-line distributor; by earning up to a five percent "royalty value" of three generations of qualified down-line distributors' volume ("royalty overrides"); by earning a bonus of up to four percent of a "royalty value" of the fourth, fifth, and sixth generation qualified down-line supervisors ("bonus level royalty overrides"); and by earning "periodic promotional bonuses." *Id.* ¶¶ 20, 22, 23, 24, 25, 27.

The plaintiffs contend that ILO qualified as a "Bonus Level Supervisor." *Id.* ¶ 28. IMAs qualified as bonus level supervisors can earn an additional three levels of royalty overrides, but in exchange must sign a non-compete agreement. *Id.* ¶ 27. On July 26, 2016, ILO "voluntarily terminated its non-compete." *Id.* ¶ 35. ILO was suspended by Omnitrition on July 28, 2016, and terminated on August 5, 2016. *Id.* ¶ 35. The plaintiffs maintain that they developed a down-line of distributors prior to termination and that this down-line constitutes an independent business owned by the plaintiffs. *Id.* ¶ 41.

### B. Procedural Background

The plaintiffs filed their complaint on August 18, 2016. See *id.* Whitehair sues Omnitrition for breach of contract, violating the Texas Theft Liability Act ("TTLA"), business disparagement, tortious interference with business relationships, and violating the Lanham Act. *Id.* at 8-12. ILO accuses Omnitrition of breach of contract, violating the TTLA, tortious interference with business relationships, and

- 3 -

violating the Lanham Act.  *Id.*  The plaintiffs also seek a declaratory judgment

concerning five provisions of the contract.  *Id.* at 7-8.

In response, Omnitrition filed the instant motion pursuant to Federal Rules of

Civil Procedure 12(b)(1), 12(b)(6), and 12(e).  *See* Defendant's Motion to Dismiss

("Motion") (docket entry 9).  The plaintiffs then filed a timely response, which was

followed by Omnitrition's timely reply.  *See* Plaintiffs' Response to Defendant's

Motion to Dismiss ("Plaintiffs' Response") (docket entry 18); Defendant's Reply to

the Motion to Dismiss (docket entry 19).  The motion is now ripe for decision.

## II.  ANALYSIS

### A.  Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) authorizes the dismissal of a case for lack of jurisdiction over the

subject matter.  FED. R. CIV. P. 12(b)(1).  Subject-matter jurisdiction must be

resolved before any other challenge because "the court must find jurisdiction before

determining the validity of a claim."  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169,

172 (5th Cir. 1994) (citation and internal quotation marks omitted); see also *Ruhrgas*

*AG v. Marathon Oil Company*, 526 U.S. 574, 577 ("The requirement that jurisdiction

be established as a threshold matter . . . is inflexible and without exception.").  On a

Rule 12(b)(1) motion, which "concerns the court's 'Very power to hear the case . . .

[,] the trial court is free to weigh the evidence and satisfy itself as to the existence of

its power to hear the case.'"  *MDPhysicians & Associates, Inc. v. State Board of Insurance*,

957 F.2d 178, 180-81 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413

(5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).

Article III of the United States Constitution limits federal courts' jurisdiction

to "cases" and "controversies."  U.S. CONST. art. III § 2.  Standing -- *i.e.*, the need to

show that the plaintiffs have a direct, personal stake in the outcome of the suit -- is

an "essential and unchanging part" of this case-or-controversy requirement.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "The federal courts are under an

independent obligation to examine their own jurisdiction, and standing is perhaps the

most important of [the jurisdictional] doctrines."  *United States v. Hays*, 515 U.S.

737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990))

(internal quotation marks omitted).  As the Supreme Court explained in *Lujan*, the

"irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff must have suffered an "injury in fact" --
> an invasion of a legally protected interest which is
> (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical.'"  Second,
> there must be a causal connection between the injury and
> the conduct complained of -- the injury has to be "fairly
> . . . trace[able] to the challenged action of the defendant,
> and not . . . th[e] result [of] the independent action of
> some third party not before the court."  Third, it must be
> "likely," as opposed to merely "speculative," that the injury
> will be "redressed by a favorable decision."

504 U.S. at 560-61 (internal citations and footnote omitted); see also *Vermont Agency*

*of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Public*

- 5 -

*Citizen, Inc. v. Bomer*, 274 F.3d 212, 217-18 (5th Cir. 2001).  All three elements must exist to establish Article III standing.  *Vermont Agency*, 529 U.S. at 771.  Because these elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir.1990) (citing *Williamson*, 645 F.2d at 413)).

Omnitrition urges that ILO lacks standing to bring its claim because "ILO failed to allege what written contract or other writing it claims to have been a party with Omnitrition."  Motion ¶ 5.  The plaintiffs argue that the "Sales and Marketing Plan and Rules and Regulations Handbook" ("the handbook") establishes a contractual relationship between ILO and Omnitrition.  *See* Complaint ¶¶ 9, 31-32.

- 6 -

However, the complaint fails to describe the nature of the relationship between ILO and Omnitrition and does not state when or even if ILO was approved as an IMA. The complaint does not explain why ILO was created.  Further, the complaint does not distinguish between Whitehair's down-line and ILO's down-line, although presumably the plaintiffs contend that ILO and Whitehair have one down-line between them.  See *id.* ¶¶ 39, 35.

Here, if the facts alleged in the complaint are taken as true, ILO has a direct and personal interest in the outcome of this case.  It states that "Whitehair, acting through I Love Omni, produced millions of dollars in sales to Defendant."  *Id.* ¶ 39. The complaint further avers that ILO was a bonus level supervisor which, the plaintiffs contend, renders ILO an IMA.  See *id.* ¶ 28, Exhibit A, at 4.  According to the complaint, when an IMA reaches a certain sales volume for a specified period of time, the IMA is eligible "to receive a royalty Override and/or Bonus Level Royalty Override payment(s)."  *Id.*, Exhibit A, at 8.

The complaint contains sufficient factual allegations to demonstrate that ILO suffered an "injury in fact," both "concrete and particularized" and "actual and imminent" by alleging that ILO was terminated prior to the end of the response period, that Omnitrition withheld earned commissions from ILO, and that Omnitrition improperly calculated commissions, royalty payments, and bonus payments to ILO.  *Id.* ¶¶ 35, 36.  ILO has a direct, personal stake in the outcome of

the case because of its alleged economic injuries, and ILO has standing to bring its

claims.  See *Lujan*, 504 U.S. at 560; *Texas Democratic Party v. Benkiser*, 459 F.3d 582,

586 (5th Cir. 2006) ("[E]conomic injury is a quintessential injury upon which to

base standing.").  Therefore, Omnitrition's motion to dismiss for lack of standing is

denied.

### B.  Rule 12(b)(6) Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

(internal quotation marks, brackets, and citation omitted).  "Factual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that

all the allegations in the complaint are true (even if doubtful in fact)."  *In re Katrina*

*Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation

marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in

the light most favorable to the plaintiff."  *Id.* (quoting *Martin K. Eby Construction*

*Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004))
(internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine
whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*,
556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings
that, because they are no more than conclusions, are not entitled to the assumption
of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded
allegations and "determine whether they plausibly give rise to an entitlement of
relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice
pleading standard to a "probability requirement," but "a sheer possibility that a
defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The
plaintiff must "plead[] factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the
well-pleaded facts do not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader
is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P.
8(a)(2)). The court, drawing on its judicial experience and common sense, must
undertake the "context-specific task" of determining whether the plaintiffs'
allegations "nudge" their claims against Omnitrition "across the line from conceivable
to plausible." See *id.* at 679, 683.

1.  *The Plaintiffs' Claim for Declaratory Judgment*

Under Texas law, a party to a written contract "may have determined [by declaratory judgment] any question of construction or validity arising under the . . . contract." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2014). "When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a) (Vernon 2014). "A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Association*, 141 S.W.3d 158, 163-64 (Tex. 2004).

The plaintiffs fail to state a claim for declaratory judgment because they fail to demonstrate, on each issue, that a justiciable controversy exists and that the controversy will be resolved by the declaration sought. See *id.* Further, the plaintiffs' declaratory judgment claim lacks sufficient factual allegations and is a formulaic recitation of the elements. See *Twombly*, 550 U.S. at 555. Therefore, Omnitrition's motion to dismiss the plaintiffs' declaratory judgment claims pursuant to Rule 12(b)(6) is granted.

2.   *The Plaintiffs' Claim for Breach of Contract*

"Under Texas law, [t]he essential elements in a breach of contract claim are as follows:  (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Bridgmon v. Array Systems Corporation*, 325 F.3d 572, 577 (5th Cir. 2003) (internal quotations omitted). Omnitrition first argues that Whitehair did not assert a breach of contract claim. Motion ¶ 1.[1]  However, the court finds that both of the plaintiffs asserted a breach of contract claim.[2]  Omnitrition does not seek to dismiss Whitehair's breach of contract claim. *See* Motion ¶¶ 18, 19, 20.

Omnitrition seeks to dismiss ILO's claim, contending that ILO failed to allege the existence of a contractual relationship between ILO and Omnitrition.  Motion ¶ 19.  While the relationship between ILO and Whitehair is not detailed in the complaint, the plaintiffs alleged that ILO was terminated by Omnitrition, and prior to termination, ILO was a bonus level supervisor.  Complaint ¶¶ 28, 35.  These facts

---

[1]     In its motion to dismiss, Omnitrition contends that Whitehair does not assert "[a Breach of Provisions of Sales and Marketing Plan and Rules and Regulation Handbook] claim on the face of the complaint."  Motion ¶ 1.

[2]     The breach of contract section of the complaint includes the use of the word "plaintiffs."  *See* Complaint ¶¶ 34, 37.  For example, the complaint includes the following: "As a result of Defendant's failure to honor the Sales and Marketing Plan and improper enforcement of the Rules and Regulations, Plaintiffs have suffered monetary damages that are likely to exceed $2,000,000."  *Id.* ¶ 37.

support an inference that a contractual agreement governed the relationship between ILO and Omnitrition.  As a result, Omnitrition's motion to dismiss ILO's breach of contract claim pursuant to Rule 12(b)(6) is denied.

3. *The Plaintiffs' Claim for Violation of the Texas Theft Liability Act*

The TTLA provides that a defendant is liable to a plaintiff for damages resulting from a theft, as defined by the Texas Penal Code.  TEX. CIV. PRAC. & REM. CODE ANN §§ 134.002-134.003 (Vernon 2011).  The Texas theft statute provides that it is an offense to "unlawfully appropriate[ ] property with intent to deprive the owner of property."  TEX. PEN. CODE ANN. § 31.03(a) (Vernon 2011).  "Appropriate" is defined as bringing about the transfer of title, TEX. PEN. CODE ANN. § 31.01(4) (Vernon 2011), which the plaintiffs contend occurred when Omnitrition claimed ownership of the ILO/Whitehair down-line following ILO's suspension and termination and when Omnitrition retained the plaintiffs' commissions and other payments.  Complaint ¶¶ 41, 42.

The plaintiffs brought their TTLA claim under Texas Penal Code § 31.04(a)(4).  Complaint ¶ 38.  Under that section, a person commits theft if "the actor intentionally or knowingly secures the performance of the service by agreeing to provide compensation and, after the service is rendered, fails to make full payment after receiving notice demanding payment."  TEX. PEN. CODE ANN. § 31.04(a)(4).

Omnitrition has met its heavy burden of demonstrating that the plaintiffs will not able to establish a TTLA claim under § 31.04(a)(4).  The complaint makes only conclusory allegations, merely recites the elements of the applicable codes, and does not offer sufficient factual support.  See *Twombly*, 550 U.S. at 555.  Further, the plaintiffs do not assert that Omnitrition received notice demanding payment -- one of the two elements of TEX. PEN. CODE ANN. § 31.04.  Thus, the court concludes that the plaintiffs have not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Omnitrition's 12(b)(6) motion to dismiss the plaintiffs' TTLA claims is granted.

### 4.  *Whitehair's Business Disparagement Claim*

The general elements of a claim for business disparagement are (1) publication by the defendant of the disparaging words, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages.  *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); 67 TEX. JUR. 3D SLANDER OF TITLE § 4 (2015).  "The tort is part of the body of law concerned with the subject of interference with commercial or economic relations." *Hurlbut v. Gulf Atlantic Life Insurance Company*, 749 S.W.2d 762, 766 (Tex. 1987).  The Restatement identifies the tort by the name "injurious falsehood" and notes its application "in cases of the disparagement of property in land, chattels, or intangible things or of their quality." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 623A, comment a (1977)).

In her business disparagement claim, Whitehair averred that Omnitrition undertook a "campaign to disparage" her reputation following ILO's suspension and termination.  Complaint ¶¶ 41, 43.  However, Whitehair fails to include exactly where and to whom the statements were published.  See *id*.  Because a plaintiff is required to plead that the statements were published for the claim of business disparagement, the plaintiffs' claim is deficient and must be dismissed.  See *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, No. H-09-1574, 2010 WL 2757523, at *3 (S.D. Tex. July 13, 2010) (dismissing defamation and business disparagement claims when the plaintiff "failed to plead any facts in support of the publication element of his claims").[3]  Thus, Omnitrition's motion to dismiss pursuant to Rule 12(b)(6) is granted as to Whitehair's business disparagement claim.

5.  *The Plaintiffs' Claims for Tortious Interference
with Business Relationships*

Under Texas law, the "elements of a cause of action for tortious interference are (1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage and (4) actual damage or loss occurred."  *Victoria Bank & Trust Company v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991).  "To establish proximate cause,

---

[3]     Because the plaintiffs failed to meet the first element of a claim for business disparagement, the court need not address whether Whitehair's factual allegations satisfy the remaining elements of the claim.

a party must show that the defendant took an active part in persuading a party to a contract to breach it." *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 493 (5th Cir. 2008) (citation and internal quotation marks omitted).

The plaintiffs failed to provide factual assertions supporting the elements of a tortious interference claim. First, the plaintiffs did not explicitly plead the existence of a contract subject to interference between ILO, or Whitehair, and the down-line. Further, the plaintiffs did not provide any facts, even tangentially, demonstrating that the "defendant took an active part in persuading a party to a contract to breach it" and thus failed to adequately plead Omnitrition's acts were the proximate cause of the plaintiffs' damage. *Id.* Because the plaintiffs failed to meet the first and third elements, Omnitrition's motion to dismiss pursuant to Rule 12(b)(6) is granted as to the plaintiffs' tortious interference claim.

6. *The Plaintiffs' Claims for Lanham Act Violations*

The plaintiffs contend that Omnitrition made the following false and misleading commercial statements, and that these statements injured the plaintiffs:

    a.    Omnitrition has 5.2 million distributors in 24 countries around the world.

    b.    Any distributor who signed up on or after March 1st, 2012 will be subject to auto renewal annually within 1 month of the anniversary of their sign up date and will have the charge applied to the credit card on file.

Complaint ¶ 48.  Omnitrition, on the other hand, asserts that the plaintiffs lack standing to bring their Lanham Act claim.  Motion ¶¶ 41-42 (citing 15 U.S.C.A. § 1125).

To establish standing under § 1125(a), a plaintiff "must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark International, Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S. Ct. 1377, 1395 (2014).  Further, a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

Omnitrition contends, and the court agrees, that the plaintiffs do not provide any facts regarding their alleged injuries, or that Omnitrition's conduct deceived consumers.  Motion ¶ 35.  The plaintiffs failed to allege that Omnitrition's conduct "caused [consumers] to withhold trade from the plaintiff." *Lexmark International, Inc.*, 134 S. Ct. at 1391.  The plaintiffs do not make any factual allegations that Omnitrition's statements caused customers to switch from purchasing the plaintiffs' products to purchasing Omnitrition's products or that consumers do not distinguish the plaintiffs' products from Omnitrition's products.  Lastly, the plaintiffs generally

assert the statements caused "material injury" but do not provide any factual support linking Omnitrition's conduct and the plaintiffs' injuries.  Complaint ¶ 48.

The plaintiffs have not adequately pleaded an "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation."  *Lexmark International, Inc.*, 134 S. Ct. at 1395.  Further, the plaintiffs have not averred that Omnitrition's conduct "caused consumers to withhold trade from the plaintiffs."  *Id.* at 1391.  Therefore, the plaintiffs have failed to show that they have standing to sue under the Lanham Act.

## C.  Rule 12(e) Motion for a More Definite Statement

When a party moves for a more definite statement, "the court must determine whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading."  *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959).  Federal Rule of Civil Procedure 8(a)(2) simply requires that a claimant give "a short and plain statement of the claim showing that the pleader is entitled to relief," and *Twombly* and *Iqbal* have interpreted "short and plain" to mean that the plaintiff must plead enough facts to state a claim that is "plausible on its face."  FED. R. CIV. P. 8(a)(2); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.  The court does not believe that the plaintiffs' surviving claim -- the breach of contract claim -- is so vague that Omnitrition cannot reasonably respond to it.  Thus, Omnitrition's motion for a more definite statement is denied.

- 17 -

III.  CONCLUSION

For the above stated reasons, the defendant's Rule 12(b)(6) motion to dismiss is **GRANTED** in part and **DENIED** in part.  The defendant's motions to dismiss pursuant to Rule 12(b)(1) and 12(e) are **DENIED**.  The plaintiffs shall have leave to amend their complaint to cure these pleading defects, if they can, provided the amended complaint is filed and served no later than **March 31, 2017**.

SO **ORDERED**.

March 17, 2017.

_A. Joe Fish_

A. JOE FISH
**Senior United States District Judge**

- 18 -