IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| I LOVE OMNI, LLC and <br> HEIDI WHITEHAIR, <br><br> Plaintiff, <br><br> v. <br><br> OMNITRITION INTERNATIONAL, INC., <br><br> Defendant/Counter-Plaintiff, <br><br> v. <br><br> HEIDI WHITEHAIR, JENIFER L. GRACE, TERRY LACORE, JAMES TACKETT, AND INNOV8TIVE NUTRITION, INC. <br><br> Counter-Defendant/ <br> Third-Party Defendants. | § § § § § § § § § § § § § § § § § § § § § § CASE NO. 3:16-cv-02410-G |

_____

**COUNTER-PLAINTIFF OMNITRITION INTERNATIONAL, INC.'S
FIRST AMENDED COUNTERCLAIM, THIRD-PARTY COMPLAINT, JURY DEMAND,
AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**
_____

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Counter-Plaintiff Omnitrition International, Inc. ("Omnitrition") files this First Amended Counterclaim, Third-Party Complaint, Jury Demand, and Application for Preliminary and Permanent Injunctive Relief complaining of Heidi Whitehair ("Whitehair"), Jenifer L. Grace ("Grace"), Terry LaCore ("LaCore"), James Tackett ("Tackett"), and Innovative Nutrition, Inc. ("Innov8tive") as follows:

### I. PARTIES

1.    Counter-Plaintiff Omnitrition International, Inc. is a corporation organized under the laws of the State of Texas

2. Counter-Defendant Heidi Whitehair is a citizen of the State of Washington who has appeared herein and may be served through her counsel of record, Jenifer L. Grace.

3. Third-Party Defendant Jenifer L. Grace is a citizen of the State of Texas who may be served with Citation and this Counterclaim and Third-Party Complaint at her principal place of business located at 901 Sam Rayburn Highway, Melissa, Texas 75454, or at her residence located at 24 Brookhollow Circle, Melissa, Texas 75454, or at her residence located at 5616 Buttercup Lane, McKinney, Texas 75070.

4. Third-Party Defendant Terry LaCore is a citizen of the State of Texas who may be served with Citation and this Counterclaim and Third-Party Complaint at his residence located at 522 LaCore Lane, McKinney, Texas 75454.

5. Third-Party Defendant James Tackett is a citizen of the State of Florida who may be served with Citation and this Counterclaim and Third-Party Complaint at 3221 Chestnut Court, St. Johns, Florida 32259.

6. Third-Party Defendant Innov8tive Nutrition, Inc. is a corporation organized under the laws of the State of Texas and a citizen of the State of Texas who may be served with Citation and this Counterclaim and Third-Party Complaint through its registered agent, Jenifer L. Grace, at is registered office located at 901 Sam Rayburn Highway, Melissa, Texas 75454, or through its Directors, Jenifer L. Grace or Terry LaCore, at its principal place of business located at 1625 Wallace Drive, Suite 140, Carrollton, Texas 75006.

## II. JURISDICTION AND VENUE

7. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Counter-Plaintiff and Counter-Defendant are citizens of different U.S. states and the amount in controversy exceeds $75,000.00, excluding interest and costs. Additionally, this Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the Defend Trade Secrets Act, 18 U.S.C. § 1836, as amended, provides for federal jurisdiction over civil actions based on the misappropriation of trade secrets.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the parties consented to venue within the state or federal courts of the State of Texas.

### III. FACTS

**A.  Nature of Plaintiff's Business and relationship with Whitehair.**

9.  Omnitrition is a direct-sales, person-to-person marketing company. Omnitrition's products are sold directly to the general public through a network of independent distributors, also called Independent Marketing Associates ("IMA"). Omnitrition's relationship with its IMAs is governed by an Agreement of Distributorship and the applicable Omnitrition Sales and Marketing Plan and Rules and Regulations Handbook (the "Handbook"). Omnitrition has been in business since 1989.

10. On October 21, 1998, Whitehair signed an Agreement of Distributorship with Omnitrition. Upon signing an Agreement of Distributorship, Whitehair became bound by Omnitrition's Rules and Regulations. As stated in the Agreement of Distributorship, and agreed to by Whitehair, Omnitrition may amend its Handbook at any time.

11. On January 16, 1999, Whitehair signed an Agreement Note to Compete (the "Non-Compete Agreement"). Under the Non-Compete Agreement, Whitehair agreed that she would not compete with Omnitrition for two (2) months from the termination of her status as an IMA. Additionally, Whitehair agreed that:

> "for a period of one (1) year from termination of Distributor's status as an Omnitrition IMA, the Distributor will not, directly or indirectly (i.e. through its agents, employee, partners, spouse, or dependents), solicit, recruit, contact, or otherwise attempt to do business with, individuals who were customers or IMA's

>of Omnitrition as of the date of the termination, for any reason, of the Distributor's status as an Omnitrition Distributor IMA."

Whitehair chose to enter into the Non-Compete Agreement so that she could earn additional revenue in the form of bonus payments. For instance, Whitehair received total bonus payments in the sum of approximately $1,962,665.20 from January 1, 2013 to the date of termination.

### B. Whitehair's Infringing Activities and concerted activity with Grace, LaCore and Tackett.

12. Months before her distributorship was terminated, Whitehair set a course to leave Omnitrition and raid Omnitrition's customers and IMAs. As early as March 2014, Whitehair organized an entity in the state of Washington called Innov8U, LLC, with an assumed name of I Love Omni.

13. Later, Whitehair apparently began working with Tackett. Tackett provides video production services for direct sales marketing companies. Tackett had previously performed video services for Omnitrition. Upon information and belief, in or prior to May 2016, Tackett produced a video for Whitehair in which she was branding herself through a "blind ad." It now appears that the blind ad was designed to illegally recruit individuals into Whitehair's new venture. Blind ads are prohibited by Omnitrition, according to its rules and regulations, for several reasons, including the fact that such advertising is heavily discouraged and scrutinized by the Federal Trade Commission.

14. On April 13, 2016, Tackett purchased one item of each of Omnitrition's products. Shortly after making this purchase, Tackett communicated with the principals of Omnitrition regarding a potential purchaser of Omnitrition. Tackett stated that he knew a "motivated buyer … he currently owns 3 other network marketing companies. Based in the Dallas area." Upon information and belief, Tackett was secretly acting on behalf of LaCore, Grace and Whitehair.

However, Tackett refused to disclose the identity of this mysterious "motivated buyer" that Tackett has known for over 15 years. The owners of Omnitrition refused to entertain discussions to sell Omnitrition with Tackett's secret prospective purchasers. When Defendants determined that they could not purchase Omnitrition, Whitehair, Tackett and their co-conspirators, Grace and LaCore, planned to raid Omnitrition's network of IMAs and to "knock off" Omnitrition's products.

15. There was good reason for Tackett to withhold the identity of his principals. LaCore apparently had a prior history of raiding and other maleficent conduct related to multi-level marketing companies. In September 2008, the Securities and Exchange Commission filed a lawsuit against LaCore and his co-defendant, Mark D. Woodburn, in Case Number. 3:08-cv-1555-G (the "SEC Lawsuit"). According to the Complaint filed in the SEC Lawsuit, LaCore started working for a nutritional supplements multi-level marketing corporation called Natural Health Trends Corp. in 1999. LaCore was in charge of the worldwide distributor network. Literally the day after the SEC Lawsuit was filed, the Honorable Judge A. Joe Fish signed an Agreed Judgment as to Terry LaCore, in which LaCore was permanently enjoined from further violations of the Securities Exchange Act, and enjoined for a period of five (5) years from acting as an officer or director of any issuers that has a class of securities registered pursuant to Section 12 of the Exchange Act.

16. Additionally, in 2011, Grace organized an entity called LaCore Enterprises, LLC. LaCore is the Director, and Grace is Secretary, of LaCore Enterprises, LLC.

17. On or about August 29, 2011, LaCore executed a General Durable Power of Attorney, which was recorded in the real property records of Collin County, Texas. Under this General Durable Power of Attorney, LaCore appointed Grace full power to conduct, amount other things, any business operating transactions.

18.    Meanwhile, on September 28, 2012, LaCore set up a new entity call VAPT, Inc. LaCore is the Director of VAPT, Inc., which is or was affiliated with an entity called RIPPIN, Inc. Grace is the Secretary for VAPT, Inc. Apparently, LaCore was a co-founder and silent partner in RIPPIN.

19.    LaCore's association with Grace does not end with VAPT or RippIn. At the time the SEC Lawsuit was filed, LaCore was also sued by his former employer, National Health Trends Corp. Apparently, National Health Trends Corp. was a public company that traded under the ticker symbol BHIP. National Health Trends Corp. operated NHT Global, an international direct-selling organization that distributes personal care, wellness, and quality of life products through independent distributors. National Health Trends Corp. alleged that LaCore was raiding its employees, directly competing with it, and deliberately using National Health Trend Corp.'s stock ticker symbol for his new company – BHIP Global Inc. Now, LaCore is the Director, and Grace is the Secretary, for BHIP Global, Inc.

20.    In mid-May 2016, shortly after Tackett approached the principals of Omnitrition regarding the "motivated" potential purchaser, Tackett emailed Omnitrition IMAs a video of Whitehair promoting herself. At the same time, Whitehair created a website, www.heidiwhitehair.com, and posted "YouTube" videos promoting herself as a marketing representative through a "blind ad." Pursuant to the Handbook, Omnitrition IMAs are required to secure approval for such electronic advertising. Whitehair failed to inform Omnitrition of these "blind ads," much less secure approval for such "blind ads."

21.    After Omnitrition demanded that Whitehair remove the website and videos, Whitehair represented that she would comply. However, in July of 2016, Whitehair continued to use the website and videos to promote herself in violation of the Handbook.

22. In May 2016, Whitehair told another Omnitrition IMA that Omnitrition was "going under." Whitehair told the Omnitrition IMA that Whitehair was working on a "way out" of Omnitrition.

23. Additionally, in June 2016, Whitehair held a retreat in Arizona with other Omnitrition IMAs. Following this retreat, Whitehair told an Omnitrition IMA that she should stop sponsoring for Omnitrition. Upon information and belief, Whitehair told others, or directed others to tell their downline, that if they continued with Omnitrition, they would get sued and they should resign to avoid any legal fees; and told others to only purchase enough product to last a couple of months because Whitehair was opening a similar company with similar products.

24. In July 2015, Whitehair told another Omnitrition IMA that she should not trust Omnitrition home office, and that she should resign.

25. On July 26, 2016, Whitehair, through her lawyer, Grace, sent a letter to Omnitrition indicating that Whitehair had a potential purchaser for her distributorship. Whitehair purported to give Omnitrition the "first right of refusal" to purchase Whitehair's distributorship, as required by the Handbook. However, Whitehair and her lawyer refused to provide the identity of the potential purchaser or all of the terms of the potential purchaser, terms of which are also required by the Handbook. By the same letter, Whitehair provided notice of her intent to terminate the Non-Compete Agreement.

26. At the same time that Whitehair provided notice of her intent to terminate the Non-Compete Agreement, Whitehair, Grace and LaCore were taking steps to organize a competing entity, including drafting company policies for the new competing venture.

27. On August 6, 2016, Whitehair's distributorship with Omnitrition was terminated. On that same date, Whitehair sent videos via text message to Omnitrition IMAs, and posted a video on Facebook announcing her termination.

28. Based on filings with the Texas Secretary of State, Whitehair's new competing business – Innov8tive Nutrition, Inc. – was organized on August 9, 2016. Notably, Whitehair's lawyer, Jenifer Grace, and her partner, LaCore, are Directors of Innovative Nutrition. Tackett has been hired to promote and market Innov8tive (notably, Tackett signed an Agreement of Distributorship with Omnitrition, and that agreement remains in force and effect). With knowledge of Whitehair's Non-Compete Agreement, and the products that Innov8tive Nutrition intended to sell, Grace assisted and encouraged Whitehair to tortiously interfere with Omnitrition's other IMAs and customers. To that end, Whitehair solicited other Omnitrition IMAs to leave Omnitrition, and Grace prepared the letter that those other Omnitrition IMAs submitted to Omnitrition. Grace's actions were done with knowledge that such actions by Whitehair would violate her Non-Compete Agreement.

29. At about the same time that Whitehair's relationship with Omnitrition terminated, Whitehair continued her solicitation of Omnitrition's IMAs to leave Omnitrition. Grace, armed with the knowledge that Whitehair and all Omnitrition IMAs are subject to a non-compete agreement, drafted a form resignation letter for Omnitrition IMAs to submit to Omnitrition, thereby actively participating in Whitehair's interference with Omnitrition IMAs. Grace prepared this draft letter, not as an attorney to all of the Omnitrition IMAs that they were soliciting but, as a recruiter on behalf of Innov8tive. Various Omnitrition IMAs used this form letter to resign from Omnitrition.

30. On or about August 18, 2016, Grace and others were apparently at LaCore's facilities working on the reproduction of Omnitrition products, with the knowledge and encouragement of LaCore and Tackett.

31. On August 18, 2016, Grace filed this lawsuit on behalf of Whitehair. Only four days later, counsel for Omnitrition served Whitehair with a cease and desist e-mail to Grace, reminding Grace and Whitehair of Whitehair's Non-Compete Agreement, and demanding that Whitehair cease contacting Omnitrition's customer and IMAs as required by the Non-Compete Agreement. Grace either failed to communicate this to Whitehair, or took it upon herself to ignore the cease and desist demand, thereby participating in the conspiracy to "raid" Omnitrition by condoning Whitehair's conduct in encouraging Whitehair to solicit Omnitrition's IMAs and customers. Whitehair, with Grace's knowledge and encouragement, used the lawsuit to drive Omnitrition IMAs away from Omnitrition thereby causing harm to Omnitrition. Unabashedly, Whitehair failed and refused to cease and desist from her unlawful activity.

32. Whitehair continued to solicit Omnitrition's customers and IMAs in the months following her termination from Omnitrition. Among other violations, Whitehair directly contacted IMAs in promoting the launch of a "new network marketing company," with a launch party on October 2, 2016. Whitehair proclaimed that she "will begin a 10-city national tour on October 22nd."

33. Whitehair boldly announced her launch party to Omnitrition IMAs. In doing so, Whitehair stole Omnitrition's confidential documentation, including the contact information for numerous Omnitrition IMAs. Apparently, Whitehair, joined with her cohort, Tackett, went forward with the October 2, 2016 launch party and solicited Omnitrition IMAs.

34. Whitehair also operates a website known as "innova8tivenutrion.com." The website promotes Innov8tive Nutrition's products which are knock-offs of and compete with Omnitrition's products, and are similar to the products that Tackett ordered in April 2015. Apparently, LaCore Labs, LLC, an entity in which Grace serves as secretary and LaCore as director, is the manufacturer, formulator and creator of these products.

35. In late 2016, one or more of the Defendants submitted Omnitrition's products for testing to two labs, presumptively to determine the formula and ingredients in Omnitrition's products to further their plan to "knock off" Omnitrition's products. After receiving the results of those tests, Defendants misrepresented the results of the test to the public. In this case, and in a companion case filed by Grace pending before Judge Lindsay, Grace and her clients represented that an Omnitrition Product called Omni Drops does not contain a detectable amount of HCG. However, Grace and her clients failed to explain that Omni Drops is a homeopathic product which is measured by the electromagnetic energies of the ingredient, not by the pharmaceutical form of the ingredient as represented by Grace and her clients. Using this false information, Grace's clients posted social media messages representing that they just discovered these results though the results were obtained about two months prior to the social media messages. Defendant's counsel delivered a letter pursuant to Fed. R. Civ. P. 11 to Grace and her co-counsel, but they have not yet responded. Defendants' actions to interfere with Omnitrition's business continue undeterred.

## IV. CAUSES OF ACTION

## COUNT 1 – BREACH OF CONTRACT

36. Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

37.     Whitehair entered into an enforceable contract with Omnitrition that includes non-compete and non-solicitation covenants.  Whitehair received valuable consideration for signing the Non-Compete Agreement, and the contract is valid and enforceable.

38.     Omnitrition has fully performed its obligations under the contract.

39.     Whitehair breached one or more of the covenants in the Non-Compete Agreement by soliciting Omnitrition's customers and IMAs, and recruiting Omnitrition's IMAs to become a distributor for Whitehair's new entity – Innov8tive Nutrition, Inc.

40.     As a result, Omnitrition has been damaged in an amount within the jurisdictional limits of this Court, and will be imminently and irreparable harmed if Whitehair is not enjoined from further breaches of the Non-Compete Agreement.

## COUNT 2 – TORTIOUS INTERFERENCE WITH CONTRACTS AND PROSPECTIVE BUSINESS RELATIONS

41.     Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

42.     Omnitrition has valid, enforceable contracts with other Omnitrition IMAs, as well as its ongoing relationship with its dedicated and loyal consumers and customer base.  Whitehair is aware of these contractual and business relationships.  As set forth herein, Whitehair intentionally, maliciously and willfully induced other Omnitrition IMAs to breach their contractual obligations to Omnitrition.  The full extent of Whitehair's unlawful activities may not be currently known.  However, some of her activity has come to light.  By way of example, Whitehair, with the assistance of others involved in her conspiracy, solicited Omnitrition customers using false and deceptive advertising involving the use of inferior and knock-off products disguised as those originating from Omnitrition.  Whitehair, and her co-conspirators, are currently peddling products designed to mirror the products sold by Omnitrition, by advertising and promoting results obtained

by consumers who actually used products formulated for Omnitrition. In addition, Whitehair held business organization meetings and collected funds under the premise that the meetings and funds were associated with official Omnitrition business, when in fact these meetings were a subterfuge to divert funds into her new competing venture.

43. As a result of Whitehair's actions, Omnitrition has been damaged in an amount within the jurisdictional limits of this Court.

## **COUNT 3 – DEFENSE OF TRADE SECRETS ACT, 18 U.S.C. § 1836**

44. Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

45. Omnitrition sells its products through a network of distributors. Omnitrition maintains a list of its distributors, including contact information, in Omnitrition's "Back Office," which is a password-protected gateway for Omnitrition's distributors.

46. Whitehair has misappropriated Omnitrition's trade secrets as set forth above which are related to a service that it intended for use in interstate commerce.

47. Whitehair's actions are willful and malicious as Omnitrition objected to the disclosure of the trade secrets by Whitehair, and Whitehair refused to comply with Omnitrition's demand to destroy or return the trade secrets.

48. Omnitrition is entitled to injunctive relief prohibiting further disclosure and use of the information and requiring return of Omnitrition's trade secrets.

49. Omnitrition is entitled to damages for the actual loss cause by the misappropriation of its trade secrets and for the unjust enrichment of Whitehair as a result of the wrongfully disclosed and obtained trade secrets.

50. Omnitrition is entitled to exemplary damages and attorney's fees for the willful and malicious disclosure and appropriation which is ongoing.

## COUNT 4 – MISAPPROPRIATION UNDER THE TEXAS UNIFORM TRADE SECRETS ACT

51. Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

52. Omnitrition's confidential information identifying retail product customers and distributors, including contact information unavailable to the general public, as well as proprietary formulations, efficacy data, and corresponding marketing material, constitutes a trade secret within the meaning of the Texas Uniform Trade Secret Act, Sections 134A.001 et seq. of the Texas Civil Practices & Remedies Code, in that it is information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

53. Whitehair's conduct resulted in misappropriation of a trade secret in that it was an acquisition of a trade secret of another by a person who knew or has reason to know that the trade secret was acquired by improper means or improper use of a trade secret of another without express or implied consent by a person who used improper means to acquire the trade secret.

54. As a direct and proximate result of Whitehair's conduct, Omnitrition has lost customers and distributors, is losing customers and distributors, and will continue to lose customers and distributors. Unless restrained from doing so, Whitehair may further use and disclose confidential information contained in Omnitrition's customer list, all to Omnitrition's imminent and irreparable injury.

55. For the harm and loss suffered by Omnitrition, and the harm and loss that will continue but for the intervention of this Court, Omnitrition has no adequate remedy at law. The number of Omnitrition's customers and distributors who may be lost in the future due to Whitehair's unlawful use of Omnitrition's confidential customer information cannot be readily ascertained, and the total present and future loss of Omnitrition as a result of sales already made and to be made by Whitehair to Omnitrition's customers and distributors is similarly unascertainable with precision. Therefore, the amount necessary to compensate Omnitrition for damages it has suffered and will suffer cannot be determined.

## COUNT 5 – AIDING AND ABETTING, AND CONCERTED ACTION

56. Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

57. Grace, LaCore, Tackett and Innov8tive knew that Whitehair's conduct constituted a tort or wrongful conduct against Omnitrition. With the intent to assist Whitehair in her wrongful acts, Grace, LaCore, Tackett and Innov8tive substantially assisted and encouraged Whitehair. The assistance and encouragement of Grace, LaCore, Tackett and Innov8tive was a substantial factor in causing the tort. Defendants are jointly and severally liable to Omnitrition.

58. Grace, LaCore, Tackett and Innov8tive agreed to a plan or action to tortuously interfere with Omnitrition's IMAs and to misappropriate Omnitrition's trade secrets. In furtherance of this plan, Whitehair solicited Omnitrition IMAs, Grace prepared a form resignation letter for such Omnitrition IMAs to resign, Whitehair, Grace and LaCore organized a competing entity in which LaCore, individually or through an entity controlled by LaCore, manufactures the "knock off" product, and Defendants submitted Omnitrition's product for "testing" presumptively

to copy the formula or ingredients for such products. Grace, LaCore, Tackett and Innov8tive's own acts and the acts of Whitehair in carrying out the agreement caused injury to Omnitrition.

## COUNT 6 – CONSPIRACY

59. Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

60. Defendants had knowledge of, and agreed to, and intended a common objective among them to tortiously interfere with Omnitrition's agreements with Omnitrition IMAs and its loyal customers, and misappropriate Omnitrition's trade secrets. "Meeting of the minds" means there was an agreement or understanding between the conspirators to inflict a wrong on another party.[1] The agreement may be proved by evidence of a course of conduct from which a tacit agreement to act in concert may be inferred.[2] The agreement does not need to extend to all the details of the scheme.[3]

61. From approximately April to August 2016, Grace, LaCore, Whitehair and Tackett hatched a plan to buy Omnitrition's business. Unable to proceed discretely with their plan, Grace, LaCore, Whitehair and Tackett devised a new scheme to "knock off" Omnitrition's product, and tortiously interfere with Omnitrition's relationships with its IMAs and customers.

62. In furtherance of their plan, Whitehair began bad-mouthing Omnitrition to its IMAs and directing other IMAs to stop selling Omnitrition product. Whitehair solicited Omnitrition IMAs to the soon-to-be-formed competitive entity. Tackett participated in this plan by preparing Whitehair's "blind ad" and sending videos of Whitehair to Omnitrition IMAs. Grace participated in this plan by preparing resignation letters for Omnitrition IMAs while knowing that such IMAs

---

[1] *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex.2008).
[2] *Wackman v. Rubsamen*, 602 F.3d 391, 409 (5th Cir.2010).
[3] *Id*.

**COUNTER-PLAINTIFF OMNITRITION INTERNATIONAL, INC.'S**
**FIRST AMENDED COUNTERCLAIM, THIRD-PARTY COMPLAINT, JURY DEMAND, AND**
**APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF - PAGE 15 OF 19**

were subject to non-compete agreements. By and through Whitehair, Grace illegitimately led Omnitrition IMAs to believe that they could resign from Omnitrition and go to work for a competing company selling the same type of product through the same person that had worked with at Omnitrition – Heidi Whitehair. LaCore participated in this scheme by providing the facilities to develop and manufacture the competing product as well as providing the funds for the operation. Grace, LaCore and Whitehair formed Innov8tive as the entity used to solicit Omnitrition IMAs to sell their "knock off" product. In that regard, Grace and LaCore were not simply acting as officers or directors of Whitehair's new venture, but were tacitly assisting and encouraging Whitehair to interfere with Omnitrition's IMAs, and misappropriate Omnitrition's products.

63.     Grace, LaCore, Tackett and Innov8tive acted with intent to harm Omnitrition. This agreement to tortiously interfere with Omnitrition IMAs and its business relations with its loyal customer base, by misappropriating Omnitrition's trade secrets and passing off products formulated to mirror Omnitrition's products by touting results achieved by Omnitrition's consumers, proximately caused damage to Omnitrition.

## COUNT 7 - ATTORNEY'S FEES

64.     Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

65.     Omnitrition was required to retain the services of the undersigned law firm in order to prepare and prosecute its counterclaim. Omnitrition has agreed to pay the undersigned law firm reasonable attorney's fees in connection with the trial and all necessary appeals. Omnitrition seek to recover their reasonable and necessary attorney's fees incurred and to be incurred in connection with any trials, hearings, and appeals of this or any other court pursuant to the Handbook.

**COUNT 8: APPLICATION FOR INJUNCTIVE RELIEF**

66. Omnitrition incorporates herein by reference all of the allegations set forth in the preceding paragraphs.

67. All preceding paragraphs of this Complaint are incorporated herein by reference.

68. Whitehair breached the Non-Compete Agreement by soliciting Omnitrition's customers and IMAs within one (1) year of her date of termination. Omnitrition is therefore entitled to injunctive relief.

69. Omnitrition requests that the Court issue preliminary and permanent injunctive relief enjoining Whitehair, and all those in concert or participation with her, including any officers, directors, principals, managers, members, agents, servants, employees, successors, and assigns of Innov8tive Nutrition, from:

> (a) soliciting, recruiting, contacting or otherwise attempting to do business with, individuals who were customers or IMAs of Omnitrition as of the date of termination of Whitehair's status as an Omnitrition Distributor IMA.

70. Omnitrition will suffer immediate and irreparable damage, injury and harm for which there is no adequate remedy at law if Whitehair is not immediately and permanently enjoined from the conduct listed above.

71. The potential damage to Omnitrition if the injunctive relief requested herein is not granted far outweighs any harm that Whitehair will suffer as a result of the injunctive relief requested. Immediate and permanent injunctive relief is therefore appropriate.

**V. JURY DEMAND**

72. Omnitrition demands a jury trial and tenders the appropriate fee with this Counterclaim.

## VI. PRAYER

Omnitrition International, Inc. prays that this Original Counterclaim be filed herein, and that upon final hearing the Court enter Judgment against Counter-Defendants and Cross-Defendants awarding the following relief:

1. preliminary and permanent injunctive relief enjoining Whitehair, and all those in concert or participation with her, including any officers, directors, principals, managers, members, agents, servants, employees, successors, and assigns of Innov8tive Nutrition, from:

   (a) soliciting, recruiting, contacting or otherwise attempting to do business with, individuals who were customers or IMAs of Omnitrition as of the date of termination of Whitehair's status as an Omnitrition Distributor IMA.

   (b) Preventing Whitehair from further disclosing and/or using Omnitrition's trade secrets, and requiring the return of Omnitrition's trade secrets.

2. Judgment against Counter-Defendants and Cross-Defendants for all actual damages herein asserted;

3. Exemplary damages;

4. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

5. Taxable court costs;

6. Reasonable attorney fees;

7. Such other further relief, at law or in equity, to which Omnitrition International, Inc. is justly entitled.

Respectfully Submitted,

By:    /s/Todd A. Hoodenpyle
      Todd A. Hoodenpyle
      Texas State Bar No. 00798265
      hoodenpyle@singerlevick.com
      Singer & Levick, P.C.
      16200 Addison Road, Suite 140
      Addison, Texas 75001
      Telephone: (972) 380-5533
      Facsimile: (972) 380-5748

      Richard L. Goodman
      Ohio State Bar No. 0022520
      richard@rlgoodmanlawfirm.com
      admitted *pro hac vice*
      Richard L. Goodman Co., L.P.A.
      720 Youngstown-Warren Road, Suite E
      Niles, Ohio 44446
      Tel. (330) 652-8989
      Fax (330) 652-9652

**ATTORNEYS FOR COUNTER-PLAINTIFF OMNITRITION INTERNATIONAL, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically, notice of the filing was served on all Counsel by operation of the Court's electronic filing system, and the parties may access this filing by and through the Court's electronic filing system on this 18th day of April, 2017.

      /s/Todd A. Hoodenpyle
      Todd A. Hoodenpyle