UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| I LOVE OMNI, LLC, ET AL., )<br>)<br>Plaintiffs, )<br>)<br>VS. )<br>)<br>OMNITRITION INTERNATIONAL, )<br>INC., )<br>)<br>Defendant. ) | CIVIL ACTION NO.<br><br>3:16-CV-2410-G |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Omnitrition International, Inc. ("Omnitrition"), to dismiss the claims of the plaintiffs, I Love Omni, LLC ("ILO") and Heidi Whitehair ("Whitehair"), pursuant to FED R. CIV. P. 12(b)(6) (docket entry 29). For the reasons stated below, the defendant's motion is granted.

### I. BACKGROUND

The court provided a detailed factual background of this case in its memorandum opinion and order dated March 17, 2017 ("Order") (docket entry 26).

The plaintiffs filed their original complaint on August 18, 2016. Original Complaint ("Complaint") (docket entry 1). Whitehair sued Omnitrition for breach

of contract, violation of the Texas Theft Liability Act ("TTLA"), business disparagement, tortious interference with business relationships, and violation of the Lanham Act.  *Id.* at 8-12.  ILO sued Omnitrition for breach of contract, violation of the TTLA, tortious interference with business relationships, and violating the Lanham Act.  *Id.*  The plaintiffs also sought a declaratory judgment concerning five provisions of the contract.  *Id.* at 7-8.

Omnitrition filed a motion to dismiss the plaintiffs' claims on October 28, 2016.  *See* Defendant's Motion to Dismiss (docket entry 9).  The court dismissed the plaintiffs' claims for declaratory judgment, TTLA violations, business disparagement, tortious interference with business relationships, and Lanham Act violations.  *See* Order at 10-17.  The court denied the defendant's motion to dismiss the breach of contract claim.  *Id.* at 11-12.  The court gave the plaintiffs leave to amend their complaint to cure their pleading defects.  *Id.* at 18.

The plaintiffs timely filed an amended complaint on March 31, 2017.  *See* Plaintiffs' First Amended Complaint ("Amended Complaint") (docket entry 27).  In the amended complaint, the plaintiffs assert claims against Omnitrition for breach of contract, business disparagement, tortious interference with business relationships, and Lanham Act violations.  See *id.*  The plaintiffs dropped their declaratory judgment and TTLA claims.  See *id.*

In response, Omnitrition filed the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the business disparagement, tortious interference, and Lanham Act claims. *See* Defendant's Motion to Dismiss First Amended Complaint ("Motion") (docket entry 29). The plaintiffs then filed a timely response, which was followed by Omnitrition's timely reply. *See* Plaintiffs' Response to Defendant's Motion to Dismiss First Amended Complaint ("Plaintiffs' Response") (docket entry 33); Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss First Amended Complaint ("Reply") (docket entry 39). The motion is now ripe for decision.

## II. ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citations omitted). "Factual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

      The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader

is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against Omnitrition "across the line from conceivable to plausible." See *id.* at 679, 683.

1. *Whitehair's Business Disparagement Claim*

The general elements of a claim for business disparagement are: (1) publication by the defendant of the disparaging words; (2) falsity; (3) malice; (4) lack of privilege; and (5) special damages. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); 67 TEX. JUR. 3D SLANDER OF TITLE § 4 (2015). "The tort is part of the body of law concerned with the subject of interference with commercial or economic relations." *Hurlbut v. Gulf Atlantic Life Insurance Company*, 749 S.W.2d 762, 766 (Tex. 1987). The Restatement identifies the tort by the name "injurious falsehood" and notes its application "in cases of the disparagement of property in land, chattels, or intangible things or of their quality." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 623A, comment a (1977)).

While Whitehair identifies particular statements Omnitrition made, and to whom they were made, she still fails to state a claim for business disparagement. As Omnitrition asserts, Whitehair did not plead that any of Omnitrition's statements were false. Reply ¶¶ 5-6; *Forbes Inc.*, 124 S.W.3d at 170; see *Barrash v. American*

*Association of Neurological Surgeons, Inc.*, No. 4:13-CV-1054, 2013 WL 4401429, at *4 (S.D. Tex. Aug. 13, 2013) (concluding that the plaintiff failed to adequately plead falsity because the plaintiff "has not demonstrated or even pled that the statements . . . are false."). Nor has she pled any facts that would allow the court to reasonably infer that the statements were false.

Moreover, the plaintiffs' special damages assertion still lacks sufficient factual support. The Fifth Circuit has mandated that plaintiffs allege a "direct, pecuniary loss" attributable to a defendant's false communications to succeed on a business disparagement claim. *Johnson v. Hospital Corporation of America*, 95 F.3d 383, 391 (5th Cir. 1996). Such pecuniary loss must be "realized or liquidated, such as *specific* lost sales, loss of trade, or loss of other dealings." *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011) (citing *Astoria Industries of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 628 (Tex. App.--Fort Worth 2007, pet. denied)) (emphasis added). Finally, lost profits are special damages and must be *specifically* pleaded. *Naegeli Transportation v. Gulf Electroquip, Inc.*, 853 S.W.2d 737, 739 (Tex. App.--Houston [14th Dist.] 1993, writ denied). Whitehair asserts that she has "suffered special damages, including, lost income, associated with lost business relationships and lost sales from individuals who heard and relied on Defendant's disparaging statements." Amended Complaint ¶ 39. This conclusory assertion fails to allege the damages that Whitehair suffered with any specific factual support. See

*Nationwide Bi-Weekly Administration, Inc. v. Belo Corporation*, 512 F.3d 137, 147 (5th Cir. 2007) (affirming the dismissal of a business disparagement claim because the plaintiff "failed to allege any specific economic loss"); *Encompass*, 775 F. Supp. 2d at 959 (dismissing a business disparagement claim when "the only allegation . . . relating to special damages" was that the plaintiff suffered "lost profits and lost goodwill/business reputation"); *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *6 (N.D. Tex. Dec. 29, 2015) (Fish, J.) (concluding that the assertion that the plaintiff was "unable to find employment" and "suffered economic loss" was conclusory, and had no factual support). Therefore, because Whitehair has failed to sufficiently plead the falsity and special damages elements, her business disparagement claim is dismissed.

2. *The Plaintiffs' Claim for Tortious Interference with Business Relationships*

In the amended complaint, the plaintiffs clarify that they intended "tortious interference with business relationships" to "extend beyond existing contracts (to include prospective relationships)." Amended Complaint at 11, n.21. In the March 17 Order, the court dismissed the plaintiffs' claim for tortious interference with existing contracts because they "did not explicitly plead the existence of a contract subject to interference between ILO, or Whitehair, and the down-line." Order at 15. The plaintiffs did not address this pleading defect in their amended

complaint. Thus, to the extent that the plaintiffs intended to reassert a claim for tortious interference with existing contracts, it is dismissed.

Texas law protects prospective as well as existing contracts from third party interference. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 712-13 (Tex. 2001). Tortious interference with business or prospective contractual relations concerns "business relations that have not yet been reduced to a contract or to a continuing business relationship not amounting to a formal contract." *Heil-Quaker Corporation v. Mischer Corporation*, 863 S.W.2d 210, 214 (Tex. App.--Houston [14th Dist.] 1993, pet. granted, judgm't vacated w.r.m.). To prevail on a tortious interference with prospective business relationships claim, the plaintiff must establish that: (1) there was a reasonable probability that the plaintiff would have entered a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Though it is not necessary to prove that the contract would have certainly been made but for the interference, "that result must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Cantu v. Guerra &*

*Moore, Ltd., LLP.*, 328 S.W.3d 1, 7 (Tex. App.--San Antonio 2009, no pet. h.) (quoting *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475-76 (Tex. App.--Houston [1st Dist.] 2006, pet. denied)). As to the "independently tortious" requirement, the plaintiff must prove the defendant's conduct "would be actionable under a recognized tort." *Wal-Mart*, 52 S.W.3d at 726.

      The plaintiffs contend that Omnitrition tortiously interfered with prospective business relationships when Roger Daley, Omnitrition's founder, held a conference call with Independent Marketing Associates on August 12, 2016. Amended Complaint ¶¶ 32, 41. The plaintiffs allege that Daley disparaged Whitehair on this call, and that "given Plaintiffs close relationship with individuals on the call, . . . there was a high probability that Whitehair would have entered into a business relationship with same." *Id.* ¶ 41. The defendant asserts that the claim should be dismissed because the plaintiffs have only pleaded that "given their close relationship with unspecified individuals," there was a "high probability" that "some unspecified business relationship" would have been entered into. Motion ¶ 20. The court agrees. See *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 776 (S.D. Tex. 2010). In *M-I*, the Court dismissed M-I's tortious interference with prospective business relationships claim for failure to sufficiently plead the reasonable probability element. See *id.* The court concluded that M-I's "averment that it 'has provided [w]ellbore cleanout tools and services to BP for other [projects], and expected to provide the same for [another

project],' . . . does not plead a reasonable probability that M-I and BP would have entered into a contractual relationship for the [other] project." *Id.* Similarly, the closest Whitehair comes to pleading reasonable probability is that "given Plaintiffs close relationship with individuals on the call," there was a high probability that "Whitehair would have entered into a business relationship with same." Amended Complaint ¶ 41. In fact, M-I actually pled more than Whitehair, and its claim was still dismissed. *M-I LLC*, 733 F. Supp. 2d at 776. M-I pled a specific party with which it intended to enter into a business relationship, and pled the project that they wished the relationship to center around. *Id.* On the other hand, as Omnitrition points out, Whitehair merely points to "unspecified individuals" and "some unspecified business relationship." Motion ¶ 20. Accordingly, Whitehair fails to sufficiently plead that there was a reasonable probability that she would have entered into a business relationship with a third party.

Omnitrition further contends that the plaintiffs failed to adequately allege that they suffered any actual harm related to any tortious interference with business relationships. Motion ¶ 23. Omnitrition argues that the plaintiffs' assertion that they "have suffered damages in their ability to develop and maintain business relationships based on the above tortious conduct" is a "formulaic recitation of the elements." *Id.* Courts within this district have held that the actual loss suffered in a tortious interference with prospective business relationships claim must be

"ascertainable at the time of the litigation." *Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 WL 2729998, at *11 (N.D. Tex. June 26, 2017) (Boyle, J.). In *Santander*, the plaintiff alleged that the defendant's statements "caused customer confusion and uncertainty," "interfered with [the plaintiff's] ability to successfully maintain ongoing and financially beneficial relationships," and "caused reputational harm to [the plaintiff]." *Id.* The court concluded that the plaintiff "failed to allege any actual damages ascertainable at the time of the litigation with regard to prospective contractual relations," because the plaintiff did "not allege lost business or profits." *Id.* Furthermore, "speculation [was] required to conclude that . . . [defendant's] interference caused damages." *Id.* As a result, the claim was dismissed for failure to sufficiently plead the proximate cause and damages elements. *Id.* Here, the only damages the plaintiffs assert regarding the tortious interference claim is "their ability to develop and maintain business relationships." Motion ¶ 23. Thus, "speculation is required" to conclude that Omnitrition's alleged interference caused damages. Moreover, the plaintiffs do not allege lost business or profits regarding this claim. Therefore, as in *Santander*, the plaintiffs have "failed to allege any actual damages ascertainable at the time of the litigation with regard to prospective contractual relations." See *Santander Consumer USA, Inc.*, 2017 WL 2729998, at *11.

Finally, the plaintiffs do not sufficiently plead that Omnitrition's conduct was independently tortious. Aside from the conclusory statement that the "conduct by Omnitrition . . . [is] independently tortious and [was] purposefully designed to interfere with any ability of Plaintiff to create successful business in any other business endeavor," there is no mention of any independent tort that Omnitrition could be liable for. Amended Complaint ¶ 41. As stated above, the amended complaint's business disparagement claim is insufficient; no other independent tort is mentioned in the pleading. Thus, the plaintiffs have failed to sufficiently plead that Omnitrition's conduct was independently tortious. See *Santander Consumer USA, Inc.*, 2017 WL 2729998, at *10 (asserting that although the plaintiff alleged that "contacting customers to tell them that fraud had occurred in connection with [the plaintiff's] business constitutes an independently tortious and/or wrongful act," "[the plaintiff], however, neither references a specific tort nor lists any elements of a relevant tort."). For these reasons, the plaintiffs have failed to sufficiently plead the reasonable probability, proximate cause, damages, and independently tortious conduct elements. Therefore, the plaintiffs' tortious interference with prospective business relationships claim is dismissed.

3. *The Plaintiffs' Claims for Lanham Act Violations*

The plaintiffs contend that Omnitrition made the following false and misleading commercial statements, and that these statements injured the plaintiffs:

> a. Omnitrition has alleged on its website and promoted to have 5.2 million distributors in 24 countries around the world.
>
> b. Omnitrition asserts that its Omni Drops claim on its Supplement Fact label to contain HCG in an amount of 3x6x12x30x60x and in other promotional literature Omnitrition represents that its Omni Drops are "formulated with HCG" and that the Drops contain HCG as an "ingredient."
>
> c. Omnitrition represented to distributors and customers nationwide that their Omni Drops plan would safely allow then to shed unwanted weight.

Amended Complaint ¶ 42.

Regarding the first statement, the plaintiffs aver that "Omnitrition has nowhere near that number of distributors and is based almost exclusively in the United States." *Id.* The plaintiffs contend that the second statement violates the Lanham Act because "due to laboratory testing it is believed that Omni Drops fail to contain a detectable level of HCG." *Id.* Finally, the plaintiffs assert that the third statement violates the Lanham Act because "the Federal Drug Administration has advised consumers to steer clear of over the counter weight-loss products that contain HCG," and the FDA has said that "HCG products marketed as weight loss aids are unproven and illegal," and "it's the decrease in calories that accounts for any weight loss." *Id.* Omnitrition, on the other hand, contends that the plaintiffs lack standing to bring their Lanham Act claim. Motion ¶ 25.

To establish standing under 15 U.S.C. § 1125(a), "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark International, Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S. Ct. 1377, 1395 (2014). Further, a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391. "Only plaintiffs who have suffered an injury that negatively impacts their ability to compete in the marketplace have standing to sue" under the Lanham Act. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 797 (5th Cir. 2011).

In its March 17 Order, the court concluded that the plaintiffs had not shown they had standing to sue under the Lanham Act. Order at 16-17. The court concluded that "the plaintiffs do not provide any facts regarding their alleged injuries, or that Omnitrition's conduct deceived consumers." *Id.* at 16. In the amended complaint, the plaintiffs allege that Omnitrition's misrepresentations caused them "damage in confusion to customers and prospective customers of Plaintiff Whitehair and lost sales, which damage was proximately caused by defendant's misrepresentations." Amended Complaint ¶ 44. These allegations constitute a mere "formulaic recitation of the elements" that the Supreme Court cautioned against in *Twombly*. See *Twombly*, 550 U.S. at 555.

Furthermore, the court's March 17 Order concluded that the plaintiffs "failed to allege that Omnitrition's conduct 'caused [consumers] to withhold trade from the plaintiff.'" Order at 17; *Lexmark International, Inc.*, 134 S. Ct. at 1391. Moreover, the plaintiffs did not make "any factual allegations that Omnitrition's statements caused customers to switch from purchasing the plaintiffs' products to purchasing Omnitrition's products or that consumers do not distinguish the plaintiffs' products from Omnitrition's products." Order at 16. In the amended complaint, the plaintiffs allege that "Omnitrition's statements regarding its Omni Drops are misrepresentations about the quality of the Omni Drops" and that the "Drops are competitive with diet-related products Plaintiff Whitehair promotes through her company Innov8tive Nutrition." Amended Complaint ¶ 44. The plaintiffs have still not alleged that any consumers have switched from purchasing their product to purchasing Omnitrition's. In fact, the plaintiffs do not identify which of their products competes with Omni Drops. Therefore, the plaintiffs have not adequately pleaded an "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation." *Lexmark International, Inc.*, 134 S. Ct. at 1395. Nor have they shown that they have "suffered an injury that negatively impacts their ability to compete in the marketplace." *Harold H Huggins Realty*, 634 F.3d at 797. Thus, the plaintiffs have failed to show that they have

standing to sue under the Lanham Act. Accordingly, the plaintiffs' Lanham Act claims are dismissed.

### III. CONCLUSION

For the above stated reasons, the defendant's Rule 12(b)(6) motion to dismiss is **GRANTED**. As a result of this ruling, only the plaintiffs' claims for breach of contract remain pending.

**SO ORDERED**.

July 20, 2017.

_____
**A. JOE FISH**
**Senior United States District Judge**

- 16 -